IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01064-KLM

CHARLES T. COCKRIEL, and
COCKRIEL INSURANCE INC., formerly known as Cockriel Agency Inc.,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Motion for Partial Summary Judgment** [#23][1] and on Defendant's **Motion for Partial Summary Judgment** [#24]. Responses [#25, #26, #27] and Replies [#28, #29] have been filed with respect to each Motion. The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, Plaintiffs' Motion [#23] is **DENIED** and Defendant's Motion [#24] is **GRANTED in part and DENIED in part**.

## I. Summary of the Case[2]

---

[1] "[#23]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The majority of the material facts underlying this lawsuit are undisputed, although the parties disagree on the legal implications of those facts. The following facts are stated for the purpose of deciding the Motions presently before the Court. *See Applied Genetics Int'l, Inc. v. First*

Based on the following facts, three claims remain in this lawsuit: (1) breach of contract, (2) breach of the implied duty of good faith and fair dealing, and (3) defamation. Defendant Allstate Insurance Company ("Defendant," "Allstate," or the "Company") is a licensed insurance producer registered to do business in all fifty states. [#24-1] ¶ 4. On May 1, 2000, Plaintiff Cockriel Insurance Inc. ("Cockriel Agency Inc.," the "Agency," or "Cockriel Inc.") became an agent of Allstate by entering into an Allstate R3001C Exclusive Agency Agreement (the "EA Agreement").[3] *Id.* ¶ 5; [#24-2].   The  EA Agreement incorporates the Allstate Supplement for the R3001 Agreement (the "Supplement"), the Exclusive Agency Independent Contractor Manual (the "Manual"), and the Allstate Inc. Standards (the "Standards"), each as amended from time to time (collectively, the "Agreement").[4]  [#24-1] ¶ 5; [#24-2] at 2.  In 2004 and 2007, Cockriel Inc. acquired two agencies, with Defendant's approval, and merged them into Cockriel Inc.'s existing agency. [#24-1] ¶ 6.  Cockriel Inc. thereafter managed the Allstate book of business out of two locations in Colorado. [#24-1] ¶ 7.

In pertinent part, the EA Agreement states that Defendant may terminate the Agreement with or without cause "upon providing (90) days prior notice" or "with cause,

---

*Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) ("When reviewing a motion for summary judgment, the Court must view  the evidence in the light most favorable to the nonmoving party.").

[3]   The Affidavit of Philip George refers to the "Allstate RC3001C Exclusive Agency Agreement." [#24-1] ¶ 2.  The document itself is titled "Allstate R3001C Exclusive Agency Agreement." [#24-2] at 2.  For the purpose of adjudicating the Motions, the Court assumes that the document title in the Affidavit of Philip George contains a typographical error.  The title of the Allstate Supplement for the R3001 Agreement does not include the letter "C." [#24-3].

[4]  The parties dispute the legal implications of the role played by Plaintiff Charles T. Cockriel in connection with the Agreement, which the Court addresses below, but there is no dispute that Cockriel Inc. was a signatory to the Agreement.

immediately upon providing written notice to" Cockriel Inc. [#24-2] at 9.  The EA Agreement provides that "[c]ause may include, but is not limited to, breach of this Agreement, fraud, forgery, misrepresentation or conviction of a crime." [#24-2] at 9.  The EA Agreement further states that, upon termination, Cockriel Inc. "may transfer its entire economic interest in the business written under this Agreement . . . by selling the economic interest to an approved buyer." [#24-2] at 8.  In addition, the EA agreement states that a transfer of economic interest for any reason requires approval by Allstate, which "retains the right in its exclusive judgment to approve or disapprove such a transfer." [#24-2] at 8-9.

The Supplement also states that a "transfer of interest . . . requires prior written consent of the Company.  Such consent may be given in the Company's sole discretion and the Company's decision as to whether or not to render such consent will be final." [#24-3] at 4.  The Manual further explains that "[m]ergers are not generally approved as they do not support [Allstate's] growth strategy of establishing more points of distribution and may not be in the best interest of the customer.  There may be extenuating business circumstances where market conditions warrant a merger . . . ." [#24-4] at 6.  The Manual also states that "[a]pproval of a sale of your interest in the book of business . . . is dependent on your location being in close proximity to the buying [] Agent's location if the books of business will be merged into one of the locations." [#24-4] at 6.

On February 24, 2013, Lucas Slankard, Field Sales Leader for Allstate's West Central Region, sent an email to Philip George, Territory Sales Leader for Allstate's West Central Region, stating that on December 21, 2012, Cockriel Inc. wrote four "substantial charge backs" (meaning that insurance applications were submitted, but actual policies were never issued). [#24-1] ¶ 8; [#24-5].  In short, Defendant thereafter referred the matter

to the Law and Regulation Department for further review and investigation. [#24-1] ¶ 12. The subsequent investigation resulted in Defendant deciding to terminate the Agreement with Cockriel Inc. [#24-1] ¶ 13.

On June 10, 2013, Defendant sent a letter to Cockriel Inc. stating that Allstate was immediately terminating its relationship with Cockriel Inc. pursuant to Section XVII.B.3 of the EA Agreement "for reasons that include Ethical Standards in the Conduct of Business pertaining to integrity." [#24-1] ¶ 14; [#24-6]. Cockriel Inc. was also informed that it had the option to accept a fixed termination payment or to sell its economic interest in the Allstate book of business, but that if the Agency "elects to sell the economic interest in the book of business, Allstate has the absolute right of approval of the buyer." [#24-6]. A deadline of October 1, 2013, was set for Cockriel Inc. to complete a sale of its economic interest in the Allstate book of business. [#24-6].

Cockriel Inc. elected to attempt to sell its economic interest in the Allstate book of business, and on July 28, 2013, it presented to Allstate two potential purchasers, each of whom Cockriel Inc. claimed was capable of purchasing Cockriel Inc.'s economic interest in the Allstate book of business. [#24-1] ¶ 16; [#24-7]. In short, Defendant decided not to approve a sale to either potential purchaser. [#24-1] ¶ 19. Cockriel Inc. was thereafter given an extension of time until November 30, 2013 in which to complete sale and transfer of the economic interest. [#24-1] ¶ 20; [#24-8]. The entire economic interest of Cockriel Inc. in the Allstate book of business was sold to three separate purchasers in sales transactions effective December 1, 2013. [#24-1] ¶ 22. On December 12, 2013, Allstate's Division Manager of Licensing and Appointing COE informed the departments of insurance of Colorado, Arizona, and Georgia, all states in which Plaintiff Charles Cockriel was a

licensed producer, that the Agreement was terminated for cause "due to ethical standards in the conduct of business pertaining to integrity." [#24-1] ¶ 15; [#26-1] at 19-22.  As noted above, Plaintiffs bring claims for breach of contract, breach of the implied duty of good faith and fair dealing, and defamation.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a *prima facie* showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248;

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

## III.  Analysis

Plaintiffs seek entry of partial summary judgment with respect to Defendant's liability on Plaintiffs' first and second claims for relief, i.e., breach of contract and breach of the implied duty of good faith and fair dealing.[5]  *Motion* [#23] at 1; *Compl.* [#4] at 22, 24. Defendant seeks entry of partial summary judgment with respect to all three claims except the portion of Plaintiffs' second claim for relief, i.e., breach of the implied duty of good faith and fair dealing, that concerns Defendant's exercise of its discretion to disapprove one or more proposed purchasers of Plaintiff Cockriel Inc.'s economic interest.  *Motion* [#24] at 19 n.4.

---

[5] Plaintiffs are referred to collectively throughout the discussion for ease of reference.  As discussed below, *see* § III.B.1., the Court concludes that Plaintiff Charles T. Cockriel was not a party to the Agreement.

"The mere fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper for either party." *Estate of Bleck v. City of Alamosa*, __ F. Supp. 3d __, __, 2015 WL 2329038, at *1 n.2 (D. Colo. May 12, 2015) (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.")).   When cross motions for summary judgment are filed, the Court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atl. Richfield Co.*, 226 F.3d at 1148 (internal quotation omitted). "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a prima facie case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharm., Inc., Sec. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *Atl. Richfield Co.*, 226 F.3d at 1148.

A.    **The Parties to the Contract**

The Court first addresses an argument raised by Defendant with respect to Plaintiff Charles T. Cockriel and his claims for breach of contract and breach of the implied duty of good faith and fair dealing. *Motion* [#24] at 10.  Defendant argues that Mr. Cockriel is not a party to the Agreement and therefore is precluded from asserting these two claims. *Id.* Mr. Cockriel, while disclaiming that Plaintiff Cockriel Insurance Inc. is his alter ego,

-7-

nevertheless asserts that he has standing to sue both as a party and as an intended third-party beneficiary of the Agreement. *Response* [#26] at 3.

As Plaintiffs note, third-party beneficiary status may arise from the terms of the contract itself, from the surrounding circumstances, or by necessary implication. *Winter Park Real Estate & Invs., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. App. 2007). The EA Agreement unequivocally states "[t]his Agreement is between ALLSTATE INSURANCE COMPANY and such affiliates and subsidiaries as are named in the Supplement for the R3001 Agreement . . . and Cockriel Agency, Inc. . . ." [#24-2] at 2, 15. Further, "[n]othing in this Agreement shall be construed to confer upon any person or entity other than the Company [i.e., Defendant] and Agency [i.e., Plaintiff Cockriel Agency, Inc.] any rights under this Agreement." [#24-2] at 12, 25.

Plaintiff Charles Cockriel is defined in the EA Agreement as the "Key Person" of the Agency, and yet the EA Agreement expressly denounces conferral of any personal rights on him. [#24-2] at 3, 12, 16, 25. Thus, at the time the EA Agreement was signed by Mr. Cockriel on behalf of the Agency, Mr. Cockriel was not a named party to the contract and was expressly precluded from third-party beneficiary status by the EA Agreement's explicit language, despite his role as a sole shareholder in the Agency. To conclude that Mr. Cockriel was an intended third-party beneficiary of the Agreement would be to rewrite it, which the Court may not do under these circumstances. *Rocky Mountain Natural Gas, LLC v. Colo. Mountain Junior Coll. Dist.*, __ P.3d __, __, 2014 WL 4459269, at *4 (Colo. App. Sept. 11, 2014) ("A court may not make a new contract for the parties or rewrite their contract under the guise of construction.") (citing 11 Richard A. Lord, Williston on Contracts § 31:5 (4th ed. 1993)).

There is no genuine issue of material fact that Plaintiff Charles Cockriel is not named as a party to the contract and that the contract expressly precludes him from acquiring any personal rights under the contract.  Accordingly, Defendant's Motion [#24] on this issue is **granted** and **judgment shall enter** in favor of Defendant with respect to Plaintiff Charles Cockriel's claims for breach of contract and breach of the implied duty of good faith and fair dealing.

### B.    Breach of Contract

In short, Plaintiffs argue that, because Defendant misapplied the sole discretion provision of the Agreement, Defendant breached the contract.[6]  *Motion* [#23] at 3.   As noted above, the parties agree that the EA Agreement, the Supplement, and the Manual collectively governed the parties' relationship.[7]  *Motion* [#23] ¶¶ 5-9; *Response* [#25] ¶¶ 5-9. To succeed on a breach of contract claim in Colorado, a plaintiff must prove the following: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *Sewell v. Safeco Ins. Co. of Am.*, No. 06-cv-000150-EWN-MJW, 2007 WL 2071617, at *6 (D. Colo. July 19, 2007) (citing *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1170 (D. Colo. 2003)).

Defendant argues that the Agreement expressly and unambiguously provides

---

[6]  Plaintiffs concede that "the [sales] deadline issue [raised in the complaint] does not rise to the level of a [breach-of-contract] claim itself or create a basis for damages." *Response* [#36] at 19.

[7]  Defendant also notes that the Standards partly governed the parties' relationship, but the parties do not assert that the Standards impact the legal issues in this matter. *Response* [#25] ¶ 5.

Defendant with unfettered exclusive discretion to approve or disapprove any sale of Cockriel Inc.'s economic interest. *Response* [#25] at 9. There is no dispute that the EA Agreement states that Defendant has "the right in its exclusive judgment to approve or disapprove" any transfer of economic interest. [#24-2] at 9. However, this broad contractual right may be tempered by other provisions in the contract that are more specifically worded. "It is a basic principle of contract interpretation that a more specific provision controls the effect of more general provisions in a contract." *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo. App. 2007). Plaintiffs' argument rests on this legal principle. The parties disagree as to whether any other provision of the contract restricts Defendant's broad contractual right to approve or disapprove of the transfer of economic interest. *Compare Motion* [#23] at 15 ("[T]here were provisions in the parties' [A]greement that were designed to temper the discretionary powers of [Defendant].") *with Response* [#25] at 11 ("[N]othing in the [A]greement conditions or limits [Defendant's] discretion.").

Contract interpretation is a question of law requiring application of well-settled principles of contract interpretation to the facts. *Rich v. Ball Ranch P'ship*, 345 P.3d 980, 983 (Colo. App. 2015). "It is paramount in contract interpretation that we read a contract's terms in harmony and give effect to all the contract's provisions." *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 846 (Colo. App. 2011). Here, Plaintiffs compare two parts of the contract to support their argument that Defendant could not approve the sale of Plaintiffs' economic interest to multiple parties. They argue that Section XVI.A.[8] of the

---

[8] Section XVI.A. states in full:

contract allows for a transfer of interest "in whole or in part," but that Section XVI.B.,[9] which

governed the parties' conduct in this situation, does not.

First, the Court disagrees with Plaintiffs' premise that Section XVI.B. is a "more

specific" provision that controls the effect of the more general provision, Section XVI.A.

The mechanics of any type of transfer of an interest in the Agreement are discussed in

greater detail in Section XVI.A. than in Section XVI.B.   The latter section generically

describes a transfer of the Agency's "entire economic interest," but is less specific than

Section XVI.A. about the types of transfers permitted and prohibited.   The less specific

language of Section XVI.B. does not, therefore, control over the language of Section XVI.A.

---

Agency may not execute a transfer of its interest in this Agreement without the prior written approval of the Company.   A transfer of interest in this Agreement is described in the Supplement and EA Manual and includes, but is not limited to, any sale, merger, or assignment, in whole or in part, directly, indirectly, or contingently, of this Agreement or any rights or obligations under it.   Neither Agency, nor any shareholder or member of Agency, shall transfer any shares or interest in Agency including, but not limited to, any sale, assignment, conveyance, or the granting of any lien, security interest, pledge, or mortgage thereof, without the prior written approval of the Company.   Agency has the obligation to notify the Company of a proposed transfer and to request Company approval.

[#24-2] at 8.

[9] Section XVI.B. states in full:

Agency has an economic interest, as defined in this Agreement and the incorporated Supplement and EA Manual, in its Allstate customer accounts developed under this Agreement.   Subject to the terms and conditions set forth in this Agreement and the incorporated Supplement and EA Manual, Agency may transfer its entire economic interest in the business written under this Agreement upon termination of this Agreement by selling the economic interest in the business to an approved buyer.   The Company retains the right in its exclusive judgment to approve or disapprove such a transfer.   Any failure to disclose and obtain the prior written approval of the Company for any transfer of Agency's interest in this Agreement or any share or interest in Agency shall constitute a breach of this Agreement and cause for termination of this Agreement.

[#24-2] at 8-9.

as to transfers of interests.  *Massingill*, 176 P.3d at 825.

Moreover, Plaintiffs' interpretation of the contract is belied by the plain language of the Agreement.  *See Figuli v. State Farm Mut. Fire & Cas.*, 304 P.3d 595, 598 (Colo. App. Mar. 29, 2012) ("In contract interpretation, we begin by giving words used their plain and ordinary meaning . . . .").  The contract explicitly states in Section XVI.A. that "[a] transfer of interest *in this Agreement* . . . includes, but is not limited to, any sale, merger, or assignment, in whole or in part, directly, indirectly, or contingently, of this Agreement or any rights or obligations under it." [#24-2] at 8 (emphasis added).  This provision expressly provides for transfer of the Agreement's economic interest.  *Id.*  Moreover, the provision also expressly provides for a transfer of that interest "in whole or in part."  *Id.*

There is no dispute regarding whether the *entire* economic interest in the Agency's Allstate business was to be transferred by Plaintiffs, once Plaintiffs chose that option.  *Motion* [#23] ¶ 13; *Response* [#25] ¶ 13.  However, nothing in the contract prevented Defendant from approving the sale of Plaintiffs' economic interest in parts, as opposed to wholesale, so long as the entire economic interest was transferred.  To be sure, Defendant had the option to approve a sale of the entire economic interest to a single buyer, but given the express right of both parties to transfer an interest "in whole or in part," and the fact that the EA Agreement does not clearly state that the entire economic interest must be sold wholesale to a single buyer, the Court cannot find that Defendant breached the contract by approving multiple sales of partial interests.

This interpretation is bolstered by the Manual, which is explicitly incorporated into both Section XVI.A. and into Section XVI.B. of the EA Agreement.  [#24-2] at 8; [#24-4] at 5.  Under the heading "Sale of Agency," the Manual reiterates that, upon termination of the

parties' relationship, the agency could either sell its economic interest in the business to an approved buyer or elect to take a termination payment.  *Id.*  The parties agree that Plaintiffs chose the former option.  *Motion* [#23] ¶ 13; *Response* [#25] ¶ 13.  The language in the Manual ("[Y]ou may transfer your economic interest in the business . . . upon termination of your agency relationship with [Defendant] by . . . selling your economic interest in the business to an approved buyer . . . .") is substantially similar to the language used in the EA Agreement ("Agency may transfer its entire economic interest in the business . . . upon termination of this Agreement by selling the economic interest in the business to an approved buyer.").  [#24-4] at 5; [#24-2] at 8.  The Manual further clarifies, however, that, despite referring to a single "buyer" throughout the EA Agreement and Manual, "You can sell your economic interest in the book of business to a single purchaser or multiple purchasers . . . ." [#24-4] at 5.

Plaintiffs appear to argue that the EA Agreement may only be interpreted to permit a sale to a single purchaser.  They further assert that, in the case of a conflict, the EA Agreement controls over the Manual, and therefore any provision in the Manual that permits a sale to multiple buyers is void.  However, as discussed above, because the language of the EA Agreement does not mandate sale to a single purchaser, and because all parts of a contract should be construed "by giving effect to all provisions so that none is rendered meaningless," *Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo. App. 2010), the language of the Manual confirms that a party's economic interest could be sold to multiple buyers.

In conclusion, the Agreement explicitly permitted Defendant to approve a sale to a single purchaser *or* to multiple purchasers, and therefore Defendant did not breach the

contract by permitting a sale to multiple purchasers.  There is no genuine issue of material fact regarding whether the contract permitted the sale of Plaintiffs' economic interest to multiple buyers.  Accordingly, Plaintiff's Motion [#23] with respect to this issue is **denied**, Defendant's Motion [#24] with respect to this issue is **granted**, and **judgment shall enter** in favor of Defendant on Plaintiff Cockriel Inc.'s claim for breach of contract.

## C.  Breach of the Implied Duty of Good Faith and Fair Dealing

### 1.  Plaintiffs' Motion

"Every contract in Colorado contains an implied duty of good faith and fair dealing." *McDonald v. Zions First Nat'l Bank, N.A.*, __ P.3d __, __, 2015 WL 1090177, at *9 (Colo. App. Mar. 12, 2015) (citation omitted).  "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." *Id.* (quoting *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006)).  A plaintiff is only permitted to rely on this duty "when the manner of performance under a specific contract term allows for discretion on the part of either party." *McDonald*, 2015 WL 1090177, at *9 (citation omitted).  "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *Id.* (quoting *City of Golden*, 138 P.3d at 292 (citation omitted)).

"Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *McDonald*, 2015 WL 1090177, at *9 (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (citation omitted)).  "Each party to a contract has a justified expectation that the other will

act in a reasonable manner in its performance." *McDonald*, 2015 WL 1090177, at *9 (citation omitted).  "When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached." *Id.* (citation omitted).  The implied duty of good faith and fair dealing cannot, "[h]owever, . . . contradict terms or conditions for which a party has bargained." *Id.* (quoting *Amoco Oil Co.*, 908 P.2d at 498 (citation omitted)).  "Nor does the duty . . . inject substantive terms into the parties' contract." *McDonald*, 2015 WL 1090177, at *9 (quoting *Amoco Oil Co.*, 908 P.2d at 507 n.6 (internal quotation marks omitted)).  "Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement." *McDonald*, 2015 WL 1090177, at *9 (quoting *Amoco Oil Co.*, 908 P.2d at 507 n.6  (internal quotation marks omitted)).

In the Motion [#23], Plaintiffs combine their arguments regarding the breach of contract claim and their separate claim for breach of the implied duty of good faith and fair dealing, creating considerable confusion.  Plaintiffs' argument with respect to the latter claim appears to be that Defendant lacked discretion to disapprove of a sale of Plaintiffs' interest to a proposed single buyer when that buyer met certain specified qualifications. *See Response* [#25] at 14.   However, the language of the Agreement belies this interpretation.  As discussed in Section III.B., the EA Agreement provided Defendant with the discretion to approve or disapprove  any sale of economic interest.  Moreover, a claim for breach of the implied duty of good faith and fair dealing *requires* that the allegedly breaching party exercise a contractual right of discretion. *McDonald*, 2015 WL 1090177, at *9 (citation omitted).  Hence, to the extent that Plaintiffs argue that Defendant was not entitled to exercise discretion, the argument is inconsistent with a claim for breach of the

covenant of good faith and fair dealing.

Finally, certain undisputed facts lead to the conclusion that Plaintiffs' argument about Defendant's alleged lack of discretion is without merit.  In a letter to Plaintiffs' counsel dated November 14, 2013, Defendant's counsel briefly discussed some of Defendant's reasons for seeking multiple buyers as opposed to one buyer for Plaintiffs' economic interests:

> Allstate informed Mr. Cockriel that due to business reasons based on the size of this satellite agency; required customer service standards; and the Company's business objectives, that it will not approve this satellite agency to be sold to one existing EA, who would operate it as a satellite agency. However, Allstate will approve it to be sold to two qualified buyers that are existing Allstate Agents that would operate it as two satellite locations as a split sale of agency . . . .

*Ex. 7* [#23-1] at 52; *see also Ex. 8* [#23-1] at 54 (reiterating this information in a letter dated November 19, 2013).  The Manual further describes various issues that Defendant could take into consideration in reviewing a sale of the Agency.  However, those issues are not described in the Manual as comprising Defendant's *exclusive* considerations regarding the sale of the Agency's economic interest. [#24-4] at 6, 7.  Rather, the Manual states that an existing buyer or an outside buyer must first, at a minimum, meet those qualifications and then "*may* be approved as a buyer . . . ."  *Id.* (emphasis added); *see also id.* at 7 (stating that "the outside buyer is always subject to final Company approval").  With respect to sales between existing agents, the Manual outlines a variety of business considerations that could inform Defendant's decision as to whether to approve a sale.  *Id.* at 6.  These include proximity of the current agent to the prospective buyer, the size of the book of business being sold, whether a merger would support Defendant's "growth strategy of establishing more points of distribution," and the best interests of Defendant's customers.  *Id.*  Nothing in the Agreement prevented Defendant from approving only a sale to multiple buyers when,

in its discretion, it was appropriate to do so.

Accordingly, Plaintiff Cockriel Inc. has not carried its burden of showing an absence of a material factual dispute and that it is entitled to judgment as a matter of law on its claim for breach of the implied duty of good faith and fair dealing, and, therefore, Plaintiffs' Motion [#23] is **denied** with respect to this issue. *See, e.g.*, *Lozoya v. AllPhase Landscape Constr., Inc.*, No. 12-cv-01048-JLK, 2015 WL 1757080, at *3 (D. Colo. Apr. 15, 2015) (denying the plaintiffs' request for summary judgment on a claim because their "evidence does not meet their burden of proof . . .").

### 2.    Defendant's Motion

Defendant also seeks entry of summary judgment on Plaintiffs' claim for breach of the implied duty of good faith and fair dealing, to the extent that Plaintiffs base the claim on Defendant "allegedly 'divulging to third parties' that [Defendant] terminated [Plaintiff] Cockriel Inc. and set a short deadline for [Plaintiff] Cockriel Inc. to sell its economic interest," and to the extent that the claim is based on whether Defendant had discretion not to approve a sale to a single qualified buyer. *Motion* [#24] at 2, 17-18. Plaintiffs assert that Defendant waived its right to assert that it properly exercised its discretion when it failed to consider a purchase offer from a single buyer. *Response* [#26] at 26.

Defendant's requests are collectively better construed as a motion in limine. "A motion in limine is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (internal quotation marks omitted). Here, Defendant essentially asks the Court to hold that Plaintiff may not attempt to prove breach

of the implied duty of good faith and fair dealing by providing evidence of (1) Defendant's setting of a quick sale deadline, (2) Defendant's divulgence of information to third parties, or (3) Defendant's alleged waiver of its right to assert that it properly exercised its discretion under the contract.

With respect to the sale deadline issue, the Court has already noted that Plaintiffs respond that "the deadline issue does not rise to the level of a claim itself or create a basis for damages." *Response* [#36] at 19.  Thus, Plaintiffs concede this issue, and evidence on this point will not be permitted at trial.  Similarly, Plaintiffs concede the issue regarding divulgence of information to third parties by stating that they are no longer "pursuing any claim based upon the publication of erroneous information to any party" in connection with the implied duty of good faith and fair dealing claim. *Id.* at 27.  As a result, such evidence will also not be permitted at trial.

Regarding waiver, as already discussed, Defendant had the contractual right to approve the sale of the Agency's economic interest to a single purchaser or to multiple purchasers, within its discretion as informed by certain business considerations.  To the extent that Plaintiffs assert that Defendant's alleged failure to consider a purchase offer from a single buyer constituted a waiver of Defendant's right to assert that it properly exercised its discretion under the Agreement, the argument lacks merit.  Plaintiffs cite no legal or factual support to conclude that Defendant's failure to consider a purchase offer from a single buyer waived its right to argue that it properly exercised its discretion regarding the sale.  The Court need not search the record or applicable precedent to find a factual or legal basis for this argument.  Fed. R. Civ. P. 56(c)(3); *Dicino v. Garcia*, No. 12-cv-01274-WYD-KLM, 2014 WL 3746961, at *4 (D. Colo. July 30, 2014).  Hence, Plaintiffs

shall not be permitted to argue that Defendant's alleged failure to consider a purchase offer from a single buyer *waived* any of its rights under the Agreement. *See* [#24-2] at 12 ("The failure of either party to insist upon the performance of any of the terms of this Agreement in any one or more instances will not be construed as a waiver or relinquishment of the future performance of any such term.").

However, the primary basis of Plaintiffs' claim here appears to be that Defendant's alleged failure to fully consider a purchase offer from a single buyer was a breach of the covenant of good faith and fair dealing in the Agreement, because Defendant failed to *fairly* exercise its discretion regarding approval of a single buyer. *See McDonald*, 2015 WL 1090177, at *9. "When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached." *Tara Woods Ltd. P'ship v. Fannie Mae*, 566 F. App'x 681, 690 (10th Cir. 2014) (quoting *Wells Fargo Realty Advisors Funding Inc. v. Uioli, Inc.*, 872 P.2d 1359,1365 (Colo. App. 1994)). The duty of good faith and fair dealing "requires only that the parties perform in good faith the obligations imposed by their agreement." *Wells Fargo Realty Advisors Funding Inc.*, 872 P.2d at 1363. "Good faith performance of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* The Court has already found that the Agreement conferred on Defendant the discretion to approve or disapprove of the sale of Plaintiff's economic interest to any particular buyer or buyers, but the Agreement, like every contract in Colorado, impliedly includes the duty of good faith and fair dealing. *Geras v. Int'l Bus. Machs. Corp.*, 638 F.3d 1311, 1317 (10th Cir. 2011) (citing *Lufti v. Brighton Cmty. Hosp. Ass'n*, 40 P.3d 51, 59 (Colo. App. 2001)). Accordingly, to

succeed on this claim, Plaintiff Cockriel Inc. must present evidence that Defendant exercised its discretion either dishonestly or outside of accepted commercial practices in order to deprive Plaintiff Cockriel Inc. of the benefit of the contract.

In the Motion, Defendant has not sought summary judgment based on its alleged fair exercise of its discretion. [#24] at 19 n.4. In addition, the Court may not enter summary judgment in Defendant's favor on this claim because the Court is unaware of whether Plaintiffs intend to offer any *other* evidence of whether Defendant acted dishonestly or outside of accepted commercial practices relating to Defendant's purported breach of the covenant of good faith and fair dealing, aside from the three actions discussed above.

Accordingly, construing Defendant's requests as a motion in limine, the Court **grants** the Motion [#24] as explained above. The Court **denies** the Motion to the extent Defendant seeks partial summary judgment on the claim for breach of the covenant of good faith and fair dealing. However, Plaintiffs are precluded from presenting evidence or argument that Defendant's setting of a quick sale deadline or divulgence of information to third parties was a breach of the covenant of good faith and fair dealing. In addition, Plaintiffs may not assert that Defendant's alleged failure to consider a purchase offer from a single buyer waived its right to assert that it properly exercised its discretion under the Agreement.

## D.     Defamation Claim

Plaintiffs state that they "intend to limit [the] defamation claim to only those false statements made to the regulatory agencies noted in" Defendant's Motion [#24]. *Response* [#26] at 10 n.3. Defendant seeks summary judgment on the defamation claim on the basis of its alleged qualified privilege to send letters to insurance regulatory agencies in

Colorado, Arizona, and Georgia notifying them that its relationship with Plaintiffs was terminated "due to ethical standards in the conduct of business pertaining to integrity . . . ." [#26-1] at 19-22.  The Colorado Supreme Court has determined that, in the defamation context, "[a] qualified privilege is extended to communication made in good faith upon any subject matter in which the party communicating has an interest, or in which he has a duty either legal, moral or social, if made to a person having a corresponding interest or duty, and the burden of proving the existence of malice is cast upon the person claiming to have been defamed."  *Ling v. Whitemore*, 343 P.2d 1048, 1049-50 (Colo. 1959).  "[I]t is exclusively for the judge to determine whether the occasion on which the alleged defamatory statement was made was such to render the communication a privileged one."  *Id.* at 1050.

Defendant sent letters to the insurance departments of Colorado, Arizona, and Georgia because Plaintiff Charles Cockriel was a licensed producer in each of those states. [#24-1] ¶ 15.  Defendant notes that it was statutorily required to send notice to the insurance Commissioners of Colorado and Georgia.  *Motion* [#24] at 13.  The Colorado Insurance Code and the Georgia Insurance Code impose a duty on licensed insurance agencies to report any for-cause termination relating to dishonest practices to each state's respective insurance Commissioner within thirty days.  Colo. Rev. Stat. §§ 10-2-416(1), 10-2-801(1)(i); Ga. Code Ann. §§ 33-23-26(d), 33-23-21(5).  The Arizona Insurance Code prohibits dishonest or untrustworthy practices.  Ariz. Rev. Stat. § 20-295(A)(8).

The statement at issue in each letter is limited to the following: "The 'for-cause' termination reason is due to ethical standards in the conduct of business pertaining to integrity." [#26-1] at 19-22.  Defendant argues that this statement is entitled to a qualified

privilege because Defendant "has an interest in the ethical standards of its agents, and a legal, moral and social obligation to inform the insurance regulatory departments which oversee" Defendant's business.  The Colorado Supreme Court in *Ling v. Whittemore*, 343 P.3d at 1050, approvingly cited case law explaining that good faith opinions on the integrity and standing of tradesmen are entitled to a qualified privilege.  The Colorado Court of Appeals has further explained that "[i]f the persons involved share common interests in the subject matter of an allegedly defamatory statement, a qualified privilege exists." *Prive v. Conoco, Inc.*, 748 P.2d 349, 350 (Colo. App. 1987).  Such is the case here.  The above-cited statutes from Colorado, Georgia, and Arizona demonstrate the common interests each state and the insurance company have with respect to the integrity of insurance agents.

Once a privilege is found, "the presumption is that the communication was made in good faith and without malice." *Ling*, 343 P.2d at 1051.  The burden next shifts to Plaintiffs to demonstrate that the communications were made with express malice.  *Id.*  Falseness of the statements communicated, by itself, "is not sufficient to raise the inference that they were maliciously inspired." *Ling*, 343 P.2d at 1051.  Malice requires the communicator to either know the matter to be false or to act in reckless disregard as to its truthfulness. *Dominguez v. Babcock*, 727 P.2d 362, 366 (Colo. 1986).

Plaintiffs fail to present evidence of malice.  The letter [#24-6] to Plaintiffs notifying them of termination of the Agreement states that termination was pursuant to Section XVII.B. of the EA Agreement, which states that the "Agreement may be terminated . . . by the Company, with cause . . . .  Cause may include . . . breach of this Agreement, fraud, forgery, misrepresentation or conviction of a crime." [#24-2] at 9.  The letter stated that

termination was "for reasons that include Ethical Standards in the Conduct of Business pertaining to integrity." [#24-6]. Plaintiffs argue that Defendant's subsequent actions were not necessarily indicative of a for-cause termination, because Defendant allowed Plaintiffs to continue to operate the business until the economic interest was sold, despite language in the termination letter [#24-6] stating that termination was effective immediately. However, the fact that Defendant accommodated Plaintiffs regarding the termination time line does not demonstrate that the ultimate reason for termination of the Agreement was not "for cause." Nowhere does the Agreement require a "for cause" termination to be immediate. *Compare* [#24-2] at 9 (stating that "[t]his Agreement *will* be terminated automatically . . . on the effective date of any transfer of Agency's entire interest in this Agreement" (emphasis added)) *with* [#24-2] at 9 (stating that "[t]his Agreement *may* be terminated . . . by the Company, with cause, immediately upon providing written notice to Agency" (emphasis added)). In the absence of any other purported fact showing that the termination was not "for cause" as defined in the Agreement, Plaintiffs have failed to demonstrate a dispute of fact regarding whether the statements in the letters were made with malice.

Finally, Plaintiff argues that Defendant failed to notify Colorado and Georgia within the thirty days required by statute. However, the qualified privilege does not rest solely on statutory obligations, and the fact that Defendant sent the letters within thirty days of the sale of Plaintiffs' economic interests, as opposed to within thirty days of the termination letter, does not impact the truth of the statements in the letters. Thus, Plaintiffs have failed to provide evidence of malice, which, again, requires the communicator to either know the matter to be false or to act in reckless disregard as to its truthfulness. *See Dominguez*, 727

P.2d at 366.  Accordingly, in the absence of a material dispute about malice, summary judgment must enter in favor of Defendant on the defamation claim.

Accordingly, Defendant's Motion [#24] with respect to this issue is **granted**, and **judgment shall enter** in favor of Defendant on Plaintiffs' claim for defamation.

## IV.  Conclusion

For the foregoing reasons, the Plaintiffs' Motion [#23] is **DENIED** and Defendant's Motion [#24] is **GRANTED in part and DENIED in part**.  When final judgment enters, judgment with prejudice shall enter on behalf of Defendant and against Plaintiffs Charles T. Cockriel and Cockriel Insurance Inc. on Plaintiffs' claims for breach of contract and defamation, and on behalf of Defendant and against Plaintiff Charles T. Cockriel on Plaintiff's claim for breach of the covenant of good faith and fair dealing asserted in the Complaint and Jury Demand dated April 14, 2014.[10]

Dated: June 18, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[10]  Thus, only Plaintiff Cockriel Agency Inc.'s claim for breach of the implied duty of good faith and fair dealing remains in this lawsuit, with the limitations on evidence explained above.